[No. D012258. Fourth Dist., Div. One. June 17, 1991.]

TORREY PINES BANK, Plaintiff and Appellant, v.
JEROME HOFFMAN et al., Defendants and Respondents.

310

**COUNSEL**

Brobeck, Phleger & Harrison, Theodore W. Graham, William D. Baldwin and Ross A. Epstein for Plaintiff and Appellant.

Musick, Peeler & Garrett and David R. Clark for Defendants and Respondents.

**OPINION**

**HUFFMAN, Acting P. J.**—In this appeal we are required to decide the applicability of the protections of the antideficiency law (Code Civ. Proc., § 580a et seq.)[1] to certain personal guaranties of a trust's debt. These guaranties were made by a husband and wife who simultaneously held the capacities of trustors, trustees, and beneficiaries of the debtor, their own revocable living trust. The issue presented is whether such persons should be considered to be primary obligors of their trust's debt, to whom antideficiency protections apply, as opposed to separate and distinct "true guarantors" of the trust's debt. (See *Union Bank* v. *Gradsky* (1968) 265 Cal.App.2d 40 [71 Cal.Rptr. 64].) As a matter of law we shall conclude the nature of this trust does not support any finding of a distinction between the debt of the

---

[1]All statutory references are to the Code of Civil Procedure unless otherwise specified.

guarantors and the debt of the trust, when antideficiency protections are considered. Thus, no deficiency judgment is allowable under these facts.

Torrey Pines Bank (the bank), plaintiff below, has appealed the amended judgment entered by the trial court dismissing its complaint brought against defendants Jerome Hoffman and Naomi Joy Hoffman to enforce their personal guaranties of a construction loan made by the bank to the Hoffmans' family trust (the trust). The amended judgment additionally awarded the Hoffmans $36,974.87 in attorney's fees and costs pursuant to a contractual attorney's fees clause. On appeal, the bank attacks the dismissal and award of fees, making several claims: (1) it was error for the trial court to conclude the trust should be considered an alter ego of the Hoffmans and to rule the personal guaranties were unenforceable, (2) the court should have found that antideficiency protections were adequately waived, (3) the court failed to decide the fair value considerations of the antideficiency law were inapplicable to this action on a guaranty, and (4) the court should have ruled attorney's fees are not recoverable on a contract found to be void as violative of public policy.

None of these contentions has merit. We agree with the trial court's conclusion these guarantors, insofar as section 580a et seq. is concerned, were the alter egos of themselves as trustees and primary obligors. Accordingly, they are entitled to statutory protection against deficiency judgments. No adequate waiver of such protection was made. In addition, the contract between the parties supports the award of fees. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

Together with Vincent Albanese (formerly a party to this action and now dismissed),[2] the Hoffmans as individuals bought a parcel of land on Wabash Avenue (the property) from a previous owner who had drawn up plans to build a 92-unit apartment complex there. Going forward with the development plans with some haste (due to a desire to avoid a planned downzoning of the property which would have reduced its value), the Hoffmans and Albanese sought construction financing from the bank, which was already familiar with the property. The borrowers were to be the Hoffmans' family trust, a revocable living trust that they had created in 1982 as an estate planning device, and Albanese.

---

[2]In its complaint, the bank originally sought judicial foreclosure and specific performance of an assignment of rents provision against Albanese and the Hoffmans as trustees of their family trust, as well as enforcement of the personal guaranties of Mr. and Mrs. Hoffman as individuals. The bank completed nonjudicial foreclosure proceedings before trial, and accordingly voluntarily dismissed all its claims except those on the Hoffmans' personal guaranties.

Mr. and Mrs. Hoffman, the settlors of this family trust, also served as its trustees and were its beneficiaries during their lifetimes with their adult children and their issue as ultimate beneficiaries. The trust contained a number of standard provisions enabling it to do business through its trustees, who are permitted to bind the trust estate and borrow money secured by trust property.

Before committing the necessary funds for the construction loan, the bank obtained the borrowers' financial statements and tax returns, including information about the Hoffmans' personal assets and those of their family trust. At the time of the transaction, the Hoffmans' combined personal and trust assets had a net worth of around $18 million. The trust assets consisted of the family home in Bonita and a Chula Vista shopping center, which had a combined value of a "couple of million dollars."

Based on the borrowers' financial standing and their construction experience, the bank issued a commitment letter, requiring, among other things, that the Hoffmans personally guarantee the loan to their trust. A few weeks later, on February 7, 1986, the loan papers were ready to sign. At that time, the Hoffmans transferred their 50 percent interest in the property to their trust, and as trustees, together with Albanese, borrowed $3.05 million by promissory note for the construction loan. As security, they executed a deed of trust on the property and an assignment of the construction contract; further documentation included a completion contract, a building loan agreement, a fund control document, and loan disbursement instructions. Mr. and Mrs. Hoffman each signed a personal guaranty of the trust's loan which contained a waiver of antideficiency protections as follows:

"Guarantor waives: [¶] (i) any defense to recovery by Lender of a deficiency after nonjudicial sale of real or personal property, any defense based upon the unavailability to Lender of recovery of a deficiency judgment after nonjudicial sale of real or personal property, and any defense based upon or arising out of Sections 580a, 580b, 580d or 726 of the California Code of Civil Procedure . . . ."

The one-year term of the loan expired February 7, 1987, but was extended by agreement to August 7, 1987. Several problems at the building site became evident, including structural cracks and an easement problem that was severe enough to cause the City of San Diego to withhold permits for full occupancy of the structure. There was also difficulty in renting the apartments due to noise problems and a lack of air conditioning. On July 7, 1987, the borrowers sued their general contractor for construction defects. They made efforts to sell the property without success.

When the promissory note came due in August 1987, the borrowers defaulted. The bank filed this action for judicial foreclosure on December 11, 1987, and also began nonjudicial foreclosure proceedings. Based on additional security provided by Albanese and a stipulation for assignment of rents, the bank agreed on March 29, 1988, to forbear foreclosure proceedings and to delay the trustee's sale of the property for three months. This forbearance agreement, signed by the Hoffmans individually and as trustees, stated it was not intended to amend or modify the note and deed of trust, provided the bank had not waived any rights or remedies to collect the original indebtedness, and made no explicit reference to any waiver of antideficiency protections.

After more delay, the nonjudicial foreclosure proceedings were completed. By September 15, 1988, the date of the trustee's sale, the unpaid debt on the note was $3,507,794.94. At that time, the bank made a successful credit bid of $2.3 million for the property, based on its vice-president's valuation, a structural engineer's report, and an estimate of $1.3 million for renovation costs. The record shows that nine months later, on May 3, 1989, the bank sold the property for $3.5 million. At trial, the bank's witness (loan officer Walter Strangman) did not know what amount, if any, of the $1.3 million renovation estimate had actually been spent on repairs, although several particular changes were never made by the bank.

After dismissing Albanese and the Hoffmans' family trust as defendants, the bank proceeded to court trial on its personal guaranty claims against Mr. and Mrs. Hoffman on January 2, 1990. The court identified the threshold issue to be tried as the identity of the primary obligor under the loan, the trust and/or the individual defendants as guarantors. The bank called three witnesses, loan officer Strangman, Mr. Albanese, and as an adverse witness, Mr. Hoffman. Strangman testified no independent evaluation of the credit-worthiness of the family trust had been performed, and the bank had relied on Mr. Hoffman's status as a high net worth individual in issuing the loan. Hoffman testified he and his wife had created the trust as an estate planning tool in order to avoid probate or conservatorships and to delay taxes. However, Hoffman believed his personal assets would be liable as security for the loan whether he as an individual or his trust were the borrower. He explained, "It was one and the same. When I signed it, I figured . . . the trust was only a document to indicate when one of us passed away the other one would have the rights to it without going through probate."

After examining Hoffman on the family trust issues, the bank's attorney indicated his next line of questioning involved the problems that were occurring around the time the loan's due date was extended. The court

reiterated the key issue was "who's obligated under this loan, forgetting about the guarantee, as far as the Hoffmans were concerned," and directed the parties to argue the matter the next day. Documentary evidence was admitted, including a copy of the family trust, the guaranties, and the promissory note and deed of trust.

When trial reconvened, the court stated the general rule that a trustee is obligated under any contract entered into on behalf of the trust, unless contractually exempted. The court then reasoned the Hoffmans as trustees would be obligated directly under the loan agreement, and if the loan had been made directly to the Hoffmans, the antideficiency statute (§ 580d) would apply to limit the bank's recourse for the debt. After questioning whether the signed guaranties added any obligations to what the Hoffmans had already agreed to, the court heard argument on the issue from both parties. It then issued its statement of decision finding "the guarantors here, the Hoffmans, are in reality the principal obligors under another name: the Jerome and Naomi Joy Hoffman Trust." The court found the individual guarantors were the alter egos of the trustees and principal obligors; since the bank had proceeded under its power of sale clause to nonjudicially foreclose on the property, "it is barred from pursuing a deficiency judgment against the Hoffmans under Code of Civil Procedure Section 580d."

In further proceedings, the Hoffmans moved for attorney's fees as prevailing parties under Civil Code section 1717, relying on attorney's fees clauses in the promissory note, the deed of trust, and the personal guaranties.[3] Their motion was granted in the amount of $30,225 fees and $6,749.87 costs, for a total award of $36,974.87 against the bank. Judgment, as amended, was entered. The bank timely appealed.

### DISCUSSION

 The principal issue is: Were the Hoffmans as individuals the primary obligors on the debt incurred by their family trust? Basic rules governing trusts and an examination of the purpose of the antideficiency statutes answer this question in the affirmative. We agree with the trial court these guarantors, as persons who created, administered, and benefited from the trust, were the alter ego of the trustees as principal obligors.

 As a threshold matter we establish our standard of review. Although the record does not contain any formal motion for judgment made under section 631.8, subdivision (a) (providing for a motion for judgment in a

---

[3]They also seek additional attorney's fees incurred in responding to this appeal. (Civ. Code, § 1717.)

court trial after the completion of a party's evidentiary presentation),[4] the bank has assumed in its briefs on appeal the trial court was proceeding under section 631.8 in granting judgment for the Hoffmans and dismissing the action. We shall assume likewise. Review of such a judgment is normally conducted under the substantial evidence standard, viewing the evidence most favorably to respondents. (*Robert H. Jacobs, Inc.* v. *Westoaks Realtors, Inc.* (1984) 159 Cal.App.3d 637, 642 [205 Cal.Rptr. 620].) ■ ■ ■ However, where, as here, we review a conclusion of law based on undisputed facts, we are not bound by the trial court's interpretation and are free to draw our own conclusions of law. (*Palm* v. *Schilling* (1988) 199 Cal.App.3d 63, 67 [244 Cal.Rptr. 600]; *Jongepier* v. *Lopez* (1983) 142 Cal.App.3d 535, 538 [191 Cal.Rptr. 131].)[5]

I

### *Relationship of the Trust to the Guaranties*

A brief summary of the nature of a revocable inter vivos trust should be the starting point of our analysis of the identity of the primary obligor under these facts. Such a trust "can be a valuable component of an estate plan in many circumstances. . . ." (Cohan, Drafting Cal. Revocable Living Trusts (Cont.Ed.Bar 1984) § 2.1, p. 14.) It may provide a mechanism for managing the settlors' property during their lifetimes (*id.* at § 2.2, p. 15) and can provide many of the functions of a conservatorship for settlors unable to manage their own affairs because of illness or advanced age (*id.* at § 1.10). It provides a convenient distributing mechanism of assets upon the death of the settlors. (*Id.* at § 2.17; see *Estate of Parrette* (1985) 165 Cal.App.3d 157, 164 [211 Cal.Rptr. 313].) "Creating a revocable living trust in itself has no substantive tax effects during the settlor's lifetime" (Cohan, *op. cit. supra,* at § 2.8) and does not directly affect the estate tax due on the settlor's death, because of the settlor's retained powers to amend and revoke. (*Id.* at § 2.10, p. 21.) With regard to the liability of a trustee for a contract entered into on behalf of the trust, the general rule in effect at the time of this transaction provided for personal liability unless the contract stipulated otherwise. (*Hall* v. *Jameson* (1907) 151 Cal. 606, 611 [91 P. 518]; also see Prob. Code, § 18000.)

---

[4]However, the reporter's transcript of trial shows the Hoffmans' attorney referred to his clients as "the moving party" in argument, and the court eventually took "this motion" under submission.

[5]On a related point, the bank claims it was prejudiced when the trial court ruled on the family trust issue without allowing the bank to present its entire case. We disagree. There was sufficient evidence before the trial court to support a ruling on this point of law and there is no indication in the record that any further evidence existed that would have changed the court's ruling. The court did not abuse its discretion in reaching this dispositive issue after the evidence on the point was completed.

With these general principles in mind, we seek to determine the intersection of inter vivos trust law and the antideficiency legislation. The Supreme Court stated in *Brown v. Jensen* (1953) 41 Cal.2d 193, 197 [259 P.2d 425]: "These provisions [§§ 580-580d, 726] indicate a considered course on the part of the Legislature to limit strictly the right to recover deficiency judgments, that is, to recover on the debt more than the value of the security." As summarized by leading commentators in the real estate field, the legislation is designed to accomplish several public policy objectives:

"(1) to prevent a multiplicity of actions, (2) to prevent an overvaluation of the security, (3) to prevent the aggravation of an economic recession which would result if creditors lost their property and were also burdened with personal liability, and (4) to prevent the creditor from making an unreasonably low bid at the foreclosure sale, acquire the asset below its value, and also recover a personal judgment against the debtor." (4 Miller & Starr, Cal. Real Estate (2d ed. 1989) § 9:156, at pp. 524-525, fns. omitted; also see *Nevin v. Salk* (1975) 45 Cal.App.3d 331, 341 [119 Cal.Rptr. 370], and Abdallah, *Guarantors and the California Antideficiency Legislation: Is There Room Under the Umbrella of Protection?* (1988) 20 Pacific L.J. 127, 160.)

Section 580d, in furtherance of this policy, in pertinent part provides:

"No judgment shall be rendered for any deficiency upon a note secured by a deed of trust or mortgage upon real property . . . hereafter executed in any case in which the real property . . . has been sold by the mortgagee or trustee under power of sale contained in the mortgage or deed of trust."

This section has been applied to matters involving construction loans such as the one which gave rise to this action. (*Union Bank v. Dorn* (1967) 254 Cal.App.2d 157, 158-159 [61 Cal.Rptr. 893].) The following principles govern its scope:

"Although section 580d applies by its specific terms only to actions for 'any deficiency upon a note secured by a deed of trust' and not to actions based upon other obligations, the proscriptions of section 580d cannot be avoided through artifice [citation], and the debtor cannot be compelled to waive its provisions in advance (*Freedland v. Greco* (1955) 45 Cal.2d 462, 467-468 [289 P.2d 463]), because the antideficiency legislation was established for a public reason and cannot be contravened by a private agreement. [Citation.] In determining whether a particular recovery is precluded, we must consider whether the policy behind section 580d would be violated by

such a recovery. [Citation.]" (*Commonwealth Mortgage Assurance Co.* v. *Superior Court* (1989) 211 Cal.App.3d 508, 515 [259 Cal.Rptr. 425].)

The facts before us require interpretation of the antideficiency legislation in light of the rules that govern guaranties of loans. A basic definition is helpful: "A surety or guarantor is one who promises to answer for the debt, default, or miscarriage of another, or hypothecates property as security therefore." (Civ. Code, § 2787; see 4 Miller & Starr, *op. cit. supra*, § 9:196, pp. 620-625, and Annot., Mortgages: Effect Upon Obligation of Guarantor or Surety of Statute Forbidding or Restructuring Deficiency Judgments (1972) 49 A.L.R.3d 554, 580-581.)

A substantial body of case law has been developed which interprets the antideficiency legislation where, as here, the identity of the principal obligor of a debt is in dispute. These issues have arisen in cases involving purchase money obligations (§ 580b) as well as those involving deficiencies on notes secured by deeds of trust (§ 580d).[6] For example, the identity of the primary obligor was in issue where a corporation was the purchaser of property and the corporate officers and shareholders and their families acted as guarantors of the obligation (*Valinda Builders, Inc.* v. *Bissner* (1964) 230 Cal.App.2d 106, 111 [40 Cal.Rptr. 735] [§ 580b case; no deficiency judgment allowed]; also see *Union Bank* v. *Brummell* (1969) 269 Cal.App.2d 836, 838 [75 Cal.Rptr. 234] [§ 580d case; no deficiency judgment allowed], and *Roberts* v. *Graves* (1969) 269 Cal.App.2d 410, 414-416 [75 Cal.Rptr. 130] [§ 580b case; deficiency judgment allowed]); where individual partners purported to guarantee a debt of the partnership (*Union Bank* v. *Dorn, supra*, 254 Cal.App.2d 157, 159 [§ 580d case; no deficiency judgment allowed]; where a husband guaranteed his wife's debt that was secured by her separate property (*Mariners Sav. & Loan Assn.* v. *Neil* (1971) 22 Cal.App.3d 232, 235 [99 Cal.Rptr. 238, 49 A.L.R.3d 549] [§ 580d case; deficiency judgment allowed]); and where indemnity agreements in a mortgage insurance policy purported to ensure individual performance on promissory notes evidencing purchase money loans on real property (*Commonwealth Mortgage Assurance Co.* v. *Superior Court, supra*, 211 Cal.App.3d 508, 515 [§ 580d case; no deficiency judgment allowed]).

Despite this wealth of authority, the question we address concerning the ability of individuals who are trustees and settlors of a trust to guarantee a debt owed by that trust appears to be one of first impression.

■ It is well established that where a principal obligor purports to take on additional liability as a guarantor, nothing is added to the primary

---

[6]In general the terms of section 580b provide a greater degree of protection to the debtor than do those of section 580d; however, with regard to the specific issue we address, both lines of authority are instructive and have been extensively briefed by the parties.

obligation. (*Valinda Builders, Inc.* v. *Bissner, supra,* 230 Cal.App.2d 106; *Union Bank* v. *Dorn, supra,* 254 Cal.App.2d 157, 159.) The correct inquiry set out by the authority is whether the purported debtor is anything other than an instrumentality used by the individuals who guaranteed the debtor's obligation, and whether such instrumentality actually removed the individuals from their status and obligations as debtors. (*Valinda, supra,* at p. 110.) Put another way, are the supposed guarantors nothing more than the principal obligors under another name? (*Dorn, supra,* at p. 159.) ■ As stated in *Union Bank* v. *Brummell, supra,* 269 Cal.App.2d 836, 838, the legislative purpose of the antideficiency law may not be subverted by attempting to separate the primary obligor's interests by making a related entity the debtor while relegating the true principal obligors to the position of guarantors. (Also see *Commonwealth Mortgage Assurance Co.* v. *Superior Court, supra,* 211 Cal.App.3d 508, 515.)[7]

■ To determine whether the Hoffmans as individuals were primary obligors here such that their guaranties must be considered ineffective, we apply the approach of *Commonwealth Mortgage Assurance Co.* v. *Superior Court, supra,* 211 Cal.App.3d 508, 515, and look to the purpose and effect of the agreements to determine whether they are attempts to recover deficiencies in violation of section 580d. Similarly, as in *Valinda Builders, supra,* 230 Cal.App.2d 106, 108, we may look to the contract between the parties to find the relationship of these individuals to the entire enterprise. ■ Pursuant to Civil Code section 1642, the several contracts between the parties, relating to the same matters as part of the same transaction, are to be taken together. ■ The evidence of this transaction as a whole demonstrates substantial identity between the individual guarantors and the debtor trustees. The bank was presented with substantially the same financial information for both the family trust and the individual guarantors as an inducement to make the loan. It had a copy of the family trust (the borrower) naming the Hoffmans, the settlors, as their own trustees and beneficiaries (along with their children). Although the guaranties were signed by the Hoffmans as individuals, the bank was well aware of their trust capacities, and should have been aware of the rules regarding the purpose, usefulness, and limitations on the inter vivos trust device.

---

[7]In *Union Bank* v. *Gradsky, supra,* 265 Cal.App.2d 40, 42 (interpreting § 580d), the court went one step further and distinguished between purported guarantors who are really principal obligors acting in another capacity, and "true" guarantors whose obligations are separate and distinct from the principal debtor's. The court then discussed the circumstances under which such "true" guarantors have the power to waive antideficiency protections in advance of or at the time the debt is incurred, stating that "purported" guarantors lacked such power. (*Id.* at p. 42, fn. 2.) However, there is some authority that even principal obligors have power to waive antideficiency protections after the principal obligation is incurred. (*Russell* v. *Roberts* (1974) 39 Cal.App.3d 390 [114 Cal.Rptr. 305].) We shall discuss this issue of waiver in part II, *post.* (See also *Palm* v. *Schilling, supra,* 199 Cal.App.3d 63, 67-76.)

On this record, we should next inquire whether the debt incurred by the family trust actually imposed any obligations on the individual trustees Hoffman, as well. (*Mariners Sav. & Loan Assn.* v. *Neil, supra,* 22 Cal.App.3d 232, 235.) In *Mariners,* it was held a wife's execution of a note secured by a trust deed on her separate property did not impose any liability on her husband who had guaranteed the loan, even though they claimed the money was to be used for payment of community debts: "Defendant's [the husband's] obligation on the contract of guarantee was separate and distinct from the primary obligation of his wife." (*Ibid.*)

To apply the analysis used by the court in *Mariners Sav. & Loan Assn.* v. *Neil, supra,* 22 Cal.App.3d 232, we look to the law governing trusts. This loan was made to the family trust on February 7, 1986, at which time the rules developed by case law were still in effect. (See *Hall* v. *Jameson, supra,* 151 Cal. 606, 611.) Those rules provided (contrary to now effective Prob. Code, § 18000) that "a trustee was personally liable on a contract unless the contract stipulated that the trustee was not liable." (See Legis. Com. com., West's Ann. Prob. Code (1991 ed.) § 18000, p. 782 [Cal. Law Revision Com. com., Deering's Ann. Prob. Code (1991 ed.) § 18000, p. 603].)[8] No such provision in the note and deed of trust before us so stipulates. Accordingly, the law in effect at the time this loan was made is clear: These trustees were personally liable on the contract they entered into on behalf of the trust. There is a significant identity between these individuals and their inter vivos trust during their lifetimes, such that their trust should be deemed to be a "mere instrumentality" (*Valinda Builders, Inc.* v. *Bissner, supra,* 230 Cal.App.2d 106) through which they operated, but which never served to remove them from the status of primary obligors. Accordingly, they must be considered to be primary obligors along with their trust.[9]

The doctrine of merger relied on by the bank[10] to argue the necessary separation of interests was preserved here does not defeat this conclusion. Specifically, the bank argues an exception to the merger doctrine, as set forth

---

[8]Probate Code section 18000, effective July 1, 1987, provides: "(a) Unless otherwise provided in the contract or in this chapter, a trustee is not personally liable on a contract properly entered into in the trustee's fiduciary capacity in the course of administration of the trust unless the trustee fails to reveal the trustee's representative capacity or identify the trust in the contract. [¶] (b) The personal liability of a trustee on a contract entered into before July 1, 1987, is governed by prior law and not by this section."

[9]Because the analysis regarding the Hoffmans as trustees is dispositive on this issue, we need not consider any effect upon the validity of their guaranties of their other capacities as trustors and beneficiaries.

[10]"The doctrine of merger is, in part, that if a single person is simultaneously the owner of identical legal and equitable interests in the same thing, the equitable interest merges in the legal and absolute ownership ensues, without any division into legal and equitable interests." (Bogert, Trusts & Trustees (rev. 2d ed. 1984) § 129, pp. 397-398, fn. omitted.)

in Probate Code section 15209, subdivision (b),[11] should control: where successor beneficiaries have been named, there is no merger of trust owner-ship where there is more than one settlor, at least one of whom is a trustee, and the settlor has a lifetime beneficial interest. Under this analysis, the Hoffmans individually could guarantee their trust's debt, because the trust is preserved as a separate legal entity. The trial court did not find this reasoning persuasive, ruling the legislative intent of this section did not appear to cover these facts.

We agree. In enacting the 1986 revisions to trust law, of which Probate Code section 15209 is a part, the Legislature used as a major source the Restatement Second of Trusts. (18 Cal. Law Revision Com. Rep. (1985) p. 521.) The Restatement comment to section 99, concerning the "Beneficiary as Trustee," points out that where there are several beneficiaries who are also trustees, each beneficiary has an equitable interest that is separate from the legal interest held by the whole group; likewise, the trustees hold legal title to trust property, with such equitable interests as are determined by the terms of the trust. Therefore, "No one of them has an undivided legal interest free of the trust. No one of them, without the concurrence of the others, can compel a conveyance to him of an undivided legal interest, and thus termi-nate the trust in part [citation]; nor will the court direct the termination of the trust, even with the consent of all of them, if that would defeat a purpose of the trust [citation.]" (Rest.2d Trusts (1959) § 99, p. 228.)

Evidently, the goal sought to be accomplished by the enactment of Probate Code section 15209 was to define those situations where a trust will be terminated. That is not the issue presented by these facts, which involve a question about the operation of the antideficiency statutes where the primary obligor is a trust, where the security for the trust's debt has been foreclosed upon, and where the remaining dispute concerns the liability on guaranties made by individuals who are also settlors, trustees, and beneficiaries of the trust. The doctrine of merger and its statutory exceptions do not answer the question of the identity of the principal obligor where there is no attack on the viability of the trust. Instead, as discussed *ante*, the proper analysis is whether the trust was an instrumentality used by the primary obligors while not removing them from that status. (*Valinda Builders, Inc.* v. *Bissner, supra,* 230 Cal.App.2d 106, 110.)

---

[11]Probate Code section 15209 in full reads as follows: "If a trust provides for one or more successor beneficiaries after the death of the settlor, the trust is not invalid, merged, or terminated in either of the following circumstances: [¶] (a) Where there is one settlor who is the sole trustee and the sole beneficiary during the settlor's lifetime. [¶] (b) Where there are two or more settlors, one or more of whom are trustees, and the beneficial interest in the trust is in one or more of the settlors during the lifetime of the settlors."

■ Nor, as the bank argues, would it have been proper to admit parol evidence concerning the contractual intent of the parties as to the party to be bound by the trust's debt. We are not dealing with a factual dispute or an ambiguous contract here, but rather with questions of law arising from the application of parallel lines of authority to a given set of facts.

■ We emphasize that our holding is necessarily limited to these facts. While it would be possible in a living trust to create a greater degree of separation of interest between settlor, trustee, and beneficiary (e.g., by the use of a separate trustee), this particular trust device did not accomplish enough division between these interests to enable us to say that the purpose of the antideficiency law would be served by enforcing these personal guaranties as "true" guaranties, as opposed to "purported" guaranties. (*Union Bank* v. *Gradsky, supra,* 265 Cal.App.2d at p. 42.) We are satisfied that these guarantors must be treated as primary obligors when trust rules are applied.

II

*Postdefault Waiver of Antideficiency Protections*

■ Another important issue remains regarding the applicability of antideficiency protections: Was there an effective waiver of such protections by the Hoffmans as individuals when they signed the postdefault forbearance agreement? The bank refers to the forbearance agreement between the parties as a separate and new agreement which reaffirmed the original waiver in the guaranties themselves. Even though we consider the Hoffmans as individuals to be primary obligors on this debt, such obligors nevertheless may make an effective waiver of the provisions of section 580d at a time later than the entry into the original obligation. Miller and Starr state the applicable rule as follows:

■ "This statutory provision prohibiting a deficiency judgment after a trustee's sale [§ 580d] cannot be waived by the trustor at the time the security instrument is executed, but it can be waived subsequently by a separate agreement bound by separate consideration to the trustor [citing *Freedland* v. *Greco, supra,* 45 Cal.2d 462, 467; *Morello* v. *Metzenbaum* (1944) 25 Cal.2d 494, 499, etc.]." (4 Miller & Starr, *op. cit. supra,* § 9:156, at p. 527.)

In *Palm* v. *Schilling, supra,* 199 Cal.App.3d 63, 67-76, the court discussed section 580d in connection with its analysis of issues arising under section 580b concerning a purchase money mortgage. In interpreting the leading

case, *Freedland v. Greco* (1955) 45 Cal.2d 462 [289 P.2d 463], the court said:

> "*Freedland* indisputably dealt only with an advance or contemporaneous waiver. It is an unreasonable leap of logic to suggest a corollary of the statement that section 580d may not be waived in advance of a loan obligation is that sections 580b and 580d may be waived *after* one. Nothing in *Freedland* remotely justifies that conclusion." (*Palm v. Schilling, supra,* 199 Cal.App.3d at p. 74, italics in original.)[12]

However, in an earlier case, *Russell v. Roberts, supra,* 39 Cal.App.3d 390, 395, a postdefault waiver of section 580b protections by a debtor was held valid where the court found an implied waiver of antideficiency protections had been made by the debtor's conduct (in order to obtain a modification of the terms of the note, the debtor acknowledged the debt, unconditionally promised to pay it, and gave the creditor the right to waive any security). (Also see *Ziegler v. Barnes* (1988) 200 Cal.App.3d 224 [246 Cal.Rptr. 69] and 4 Miller & Starr, *op. cit. supra,* § 9:174, pp. 582-586.)

In order to decide if any explicit or implied waiver took place here after default, we first consider the language of the forbearance agreement. It contains a provision that it does not amend or modify the note or deed of trust; as such, it does not appear the agreement may be considered a renewal of the loan so that Civil Code section 2953, forbidding certain waivers of antideficiency protections, would apply.[13] (See *Morello v. Metzenbaum, supra,* 25 Cal.2d 494, 499-500.) The agreement further provides that by forbearing to foreclose at that time, the bank had not waived its rights or remedies to collect any indebtedness on the note. However, no specific mentions in the agreement are made of antideficiency protections.

In *Union Bank v. Gradsky, supra,* 265 Cal.App.2d 40, 48, the court indicated that in the absence of an explicit waiver of a guarantor's defense to a creditor's action to recover a deficiency after nonjudicial sale, "we shall not strain the instrument to find that waiver by implication." (*Ibid.*) This approach makes sense in light of the strong public policies sought to be

---

[12]In *Palm v. Schilling, supra,* 199 Cal.App.3d 63, the court went on to conclude that section 580b prohibits deficiency judgments in favor of a purchase money mortgagee so long as a purchase money mortgage or deed of trust is in effect upon the original real property; contractual waivers of antideficiency protection could not be allowed. (*Id.* at p. 76.)

[13]Civil Code section 2953 provides, in pertinent part: "Any express agreement made or entered into by a borrower at the time of or in connection with the making of or renewing of any loan secured by a deed of trust, mortgage or other instrument creating a lien on real property, whereby the borrower agrees to waive the rights, or privileges conferred upon him by Sections 2924, 2924b, 2924c of the Civil Code or by Sections 580a or 726 of the Code of Civil Procedure, shall be void and of no effect. . . ."

promoted by the antideficiency legislation. Neither the four corners of this forbearance agreement, nor its references to the original transaction, support any finding of waiver here. Nor does it appear the instrument is sufficiently ambiguous so that parol evidence would be of aid in its interpretation. Further, nothing in the record supports any inference that any implied waiver by conduct took place here.

Moreover, similar to the case of a purchase money obligation, it is significant that the same security always remained in place for the construction loan, as extended, and was available for nonjudicial foreclosure. The bank was free to elect its remedies and did so. (*Union Bank* v. *Gradsky, supra*, 265 Cal.App.2d 40.) Having acquired the property (which it later resold for the approximate amount of the obligation as of the time of the sale), it is now barred from seeking a deficiency judgment from these guarantors. There was no effective waiver here.[14]

## III

### *Attorney's Fees*

 Finally, we address the issue of the propriety of the trial court's award to the Hoffmans of attorney's fees under Civil Code section 1717, and the Hoffmans' request in their respondents' brief for additional fees on appeal. The bank, relying on *Geffen* v. *Moss* (1975) 53 Cal.App.3d 215, 227 [125 Cal.Rptr. 687, 79 A.L.R.3d 1232], claims no award of fees can be made on contracts found void as violative of public policy. It argues there is no contractual basis for an award of fees because the guaranty agreements have been found void and the attorney's fees clauses in the promissory note and deed of trust are not applicable because, upon its voluntary dismissal of the judicial foreclosure causes of action, the issues at this trial were limited to the enforceability of the guaranties. (Civ. Code, § 1717, subd. (b)(2); *Krueger* v. *Bank of America* (1983) 145 Cal.App.3d 204, 212 [193 Cal.Rptr. 322].)

We have already cited above the rule that several contracts between the same parties, relating to and made as part of the same transaction, should be taken together. (Civ. Code, § 1642.) This action was initially filed by the bank when the borrowers went into default on the note. After trial, the trial court found the guaranties were unenforceable for policy reasons against the

---

[14]Our resolution of the primary obligor and waiver issues here renders moot the bank's claim that the "fair value" considerations of the antideficiency statutes (§ 580a) were erroneously ignored by the trial court. In any case, we decline to issue an advisory opinion on the subject as requested.

individuals who were in effect the primary obligors under the note; it did not find the guaranties were illegal contracts.

The correct approach in such a case is to treat the liability of the principal obligor on the note and the liability of the guarantor on the guaranty agreement as interrelated. (See 4 Miller & Starr, *op. cit. supra*, § 9:199, at pp. 631-632.) The promissory note and deed of trust are integral parts of this transaction which cannot be disregarded when the issue of attorney's fees arises. We find the reasoning of *Clayton Development Co.* v. *Falvey* (1988) 206 Cal.App.3d 438, 446-447 [253 Cal.Rptr. 609] persuasive here. In that case, this court held that individuals who successfully asserted affirmative defenses of antideficiency protections under sections 580b and 726 (thus preventing the creditor from recovering damages for breach of contract on a promissory note) were entitled to recover contractual attorney's fees for such successful defense under Civil Code section 1717 and the note's attorney's fees clause. Although the contract was unenforceable, it was not void. (*Clayton Development Co.* v. *Falvey, supra*, 206 Cal.App.3d at pp. 446-447.)

In this case, the promissory note and deed of trust, which contained attorney's fees clauses, provided a basis for nonjudicial foreclosure of the security to take place. The reciprocal rights of Civil Code section 1717 are not affected by the Hoffmans' successful defense against enforceability of the guaranties. It would not be proper to allow the bank's strategic dismissal of its causes of action brought directly on the note and deed of trust to serve to deprive the prevailing parties in the remainder of the action of contractual attorney's fees based on that note and deed of trust.

### DISPOSITION

The judgment is affirmed. The Hoffmans are entitled to attorney's fees on appeal in an amount to be determined by the superior court upon filing of a cost bill.

Nares, J., and Thompson, J.,* concurred.

---

*Retired Associate Justice of the Court of Appeal, Second District, sitting under assignment by the Chairperson of the Judicial Council.