Filed 1/27/14  PNL Pomona v. Meruelo CA2/1

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION ONE

| | |
|---|---|
| PNL POMONA, L.P.,<br><br>　　　Plaintiff and Respondent,<br><br>　v.<br><br>BELINDA MERUELO, et al.,<br><br>　　　Defendants and Appellants. | No. B243334<br><br>(Super. Ct. No. KC055493) |

APPEAL from an order of the Superior Court of Los Angeles County.  Salvatore Sirna, Judge.  Reversed.

Neufeld, Marks & Gralnek, Timothy L. Neufeld and Paul S. Marks, for Plaintiffs and Appellants.

Hagan & Associates, Cara J. Hagan and Shannon C. Williams, for Defendant and Respondent.

_____

A husband and wife created a revocable intervivos family trust with themselves as trustors, trustees and beneficiaries.  They then caused the trust to take out a loan from a lender and personally guaranteed the loan.  When the borrower defaulted on the loan, the lender nonjudicially foreclosed on real property securing the loan and then sought a deficiency judgment against the guarantors, which the trial court granted.  We reverse.  California's nondeficiency statutes prevent a lender from obtaining a deficiency judgment against a primary obligor after nonjudicial foreclosure.  A guarantor of a loan to an inter vivos trust who is also the trustor, trustee and beneficiary of the trust is considered to be a primary obligor, and is not liable for any deficiency following nonjudicial foreclosure.

## BACKGROUND

**A.    The Loan**

On November 11, 1988, Homero and Belinda Meruelo formed the Meruelo Living Trust, a revocable, inter vivos trust, with themselves as trustees and beneficiaries.[1]  In March 1999, Redwood Trust, Inc., a Maryland corporation, loaned $9.8 million to the Meruelo Trust, secured by real property located in Pomona, California (the Pomona property).

On March 29, 1999, the parties executed four documents structuring and memorializing the terms of the loan.  First, Homero and Belinda, as trustees of the Meruelo Trust, executed a promissory note by which the trust promised to begin making payments of principal and interest to Redwood Trust in the amount of approximately $82,000 per month.  They then, in their personal capacities, executed a guaranty agreement in which they unconditionally guaranteed the Meruelo Trust's performance "according to the terms expressed in the Loan Documents."  The Meruelos also executed, again as trustees of the Meruelo Trust, a supplementary loan agreement wherein the trust promised to convey the Pomona property to a single purpose entity—either a limited partnership, limited liability company, or single purpose corporation—within one year

---

[1] For clarity, we will sometimes refer to the Meruelos by their first names.

and assign to it the trust's interest in the loan. Failure to do so would result in either an interest rate increase or change in the maturity date of the promissory note, at the lender's option. Finally, the Meruelos as trustees executed a deed of trust securing the Pomona property.

As relevant here, the promissory note provided that "[t]his Note shall be the joint and several obligation of all Persons executing this Note and all sureties, guarantors, and endorsers of this Note, and this Note shall be binding upon each of such Persons and their respective successors and assigns . . . ."

## B.    First Default

The Meruelo Trust and its successors faithfully made loan payments for a decade. In 2003, the Meruelo Trust transferred the Pomona property to Meruelo Pomona, a limited liability corporation, which thereafter made loan payments to Redwood Trust. In 2005, Redwood Trust assigned its interest in the Meruelo loan to respondent PNL Pomona (PNL). In 2007, Meruelo Pomona transferred the Pomona property to Merco Group 2001-2021 West Mission Blvd. (Merco Group), another limited liability corporation, which thereafter made loan payments to PNL.

PNL claimed the 2003 transfer of the Pomona property to Meruelo Pomona and the 2007 transfer to the Merco Group were made without PNL's consent and constituted a default on the loan, which by the loan's terms would justify PNL imposing an increased interest rate. PNL recorded a notice of default and began foreclosure proceedings.

In 2008, Homero Meruelo passed away, and Belinda became the executor of his estate.

## C.    Reinstatement

In October 2008, PNL Pomona and Belinda Meruelo, personally and in her capacities as trustee of the Meruelo Trust and executor of Homero's estate, entered into a "Reinstatement Agreement" whereby PNL agreed to release the notice of default, terminate foreclosure proceedings, and reinstate the loan obligation "as though no default had occurred," in exchange for a payment of $500,000 for "accrued default interest."

3

Further, Belinda Meruelo reaffirmed the obligations set forth in the promissory note, deed of trust, and guaranty, reaffirmed "security interests created thereby," and waived any defenses as to their enforceability.

In the reinstatement agreement Belinda Meruelo also purported to acknowledge and reaffirmed the following document: "Assignment of the Note obligation by Borrower to include Meruelo Pomona, LLC, a California limited liability company as successor to the Original Borrower." However, no evidence was introduced below indicating this document was ever created.

**D.      Second Default, Foreclosure, Lawsuit**

On January 2009, the Merco Group stopped making loan payments, and in March 2009 filed for bankruptcy protection.

On April 16, 2009, PNL sued Belinda Meruelo, the Estate of Homero Meruelo, the Merco Group, Meruelo Pomona, and the Meruelo Trust for breach of contract, breach of the guaranty, and *judicial* foreclosure. After dismissing the Merco Group and its cause of action for judicial foreclosure, PNL sought and received authority from the bankruptcy court to nonjudicially foreclose on the Pomona property.[2] On August 25, 2011, PNL obtained title to the Pomona property at a nonjudicial foreclosure sale for a credit bid of $7.7 million. (A credit bid constitutes a creditor's assertion of the amount it is owed. *Biancalana v. T.D. Service Co.* (2013) 56 Cal.4th 807, 816.)

The parties to the state court lawsuit thereafter stipulated that the nonjudicial foreclosure proceedings resolved PNL's claims against all but the guarantors of the loan pursuant to California's antideficiency law, Code of Civil Procedure sections 580a through 580d and 726. PNL then proceeded against Belinda Meruelo and the estate of Homero Meruelo for breach of the guaranty, which the parties stipulated would be adjudicated in a reference proceeding.

---

[2] Respondent's request for judicial notice of bankruptcy court documents is granted.

4

Belinda Meruelo, individually and on behalf of the estate of Homero, argued the guaranty was a sham, in that no meaningful distinction existed between the Meruelos' personal assets and those of the Meruelo Trust. Belinda declared those assets were coextensive, and when the loan was made in 1999, Redwood Trust never requested or received separate financial information for the trust.

On January 20, 2012, the referee entered a statement of decision in which he found appellants had waived their antideficiency defenses and further found the guaranty was fully enforceable in the amount of PNL's claimed deficiency of $3,306,941.05. Appellants objected to the statement of decision, but on May 29, 2012, the trial court overruled their objections and entered judgment affirming the referee's decision. In June 2012, the court denied appellants' motion for a new trial.

This appeal followed.

## DISCUSSION

Belinda Meruelo and the estate of Homero Meruelo contend the guaranty was unenforceable as a sham because they were primary obligors on the note, and therefore the guaranty added nothing to the principal obligation. We agree.

California's antideficiency statutes reflect a deliberate policy to limit the right to recover deficiency judgments, that is, to recover on the debt more than the value of the security. The goal of the policy is "'(1) to prevent a multiplicity of actions, (2) to prevent an overvaluation of the security, (3) to prevent the aggravation of an economic recession which would result if creditors lost their property and were also burdened with personal liability, and (4) to prevent the creditor from making an unreasonably low bid at the foreclosure sale, acquire the asset below its value, and also recover a personal judgment against the debtor.' [Citations.]" (*Torrey Pines Bank v. Hoffman* (1991) 231 Cal.App.3d 308, 318 (*Torrey Pines*).)

To further this policy, Code of Civil Procedure section 580d provides in pertinent part that "No judgment shall be rendered for any deficiency upon a note secured by a deed of trust or mortgage upon real property . . . hereafter executed in any case in which

5

the real property . . . has been sold by the mortgagee or trustee under power of sale contained in the mortgage or deed of trust." This proscription can neither be waived in advance (*Freedland v. Greco* (1955) 45 Cal.2d 462, 467-468) nor avoided or contravened by private agreement. (*Commonwealth Mortgage Assurance Co. v. Superior Court* (1989) 211 Cal.App.3d 508, 515.) "In determining whether a particular recovery is precluded, we must consider whether the policy behind section 580d would be violated by such a recovery." (*Ibid*.)

A guarantor is one "who promises to answer for the debt . . . of another . . . ." (Civ. Code, § 2787.) A person thus cannot guarantee his own debt. (4 Miller & Starr, Cal. Real Estate (3d ed.) § 10:263.) "[W]hen an intervivos revocable trust is the principal obligor on a debt subject to the antideficiency laws, a guaranty of that debt by the individual who is the trustee and settlor of the trust is ineffective because the individual and the trust are essentially the same; accordingly, the individual is deemed the principal obligor for purposes of applying the antideficiency laws." (*Cadle Co. II v. Harvey* (2000) 83 Cal.App.4th 927, 933 (*Cadle*); see *Torrey Pines*, *supra*, 231 Cal.App.3d at p. 321.)

In *Torrey Pines*, a bank made a construction loan to a family trust for the purpose of building an apartment complex on property owned by the trustees as individuals. The Hoffmans, a married couple, were the settlors of the trust and also served as its trustees and beneficiaries during their lifetimes. The trust document authorized them, as trustees, to bind the trust estate and to borrow money secured by trust property. The Hoffmans signed personal guaranties of the loan and waived the protections of the antideficiency statute (Code Civ. Proc., §§ 580a–580d). When the family trust defaulted on the loan, the bank completed a nonjudicial foreclosure and sued the Hoffmans, as guarantors, to recover the deficiency.

The appellate court held the Hoffmans, as persons who created, administered, and benefited from the trust, were the alter ego of the trustees and principal obligors. (*Torrey Pines*, *supra*, 231 Cal.App.3d at p. 316.) "It is well established that where a principal obligor purports to take on additional liability as a guarantor, nothing is added to the

6

primary obligation. . . . The correct inquiry . . . is whether the purported debtor is anything other than an instrumentality used by the individuals who guaranteed the debtor's obligation, and whether such instrumentality actually removed the individuals from their status and obligations as debtors. . . . Put another way, are the supposed guarantors[, the Hoffmans,] nothing more than the principal obligors[, the trustees,] under another name?" (*Id*. at pp. 319-320, citations omitted.) "The evidence of this transaction as a whole demonstrates substantial identity between the individual guarantors and the debtor trustees. The bank was presented with substantially the same financial information for both the family trust and the individual guarantors as an inducement to make the loan. It had a copy of the family trust (the borrower) naming the Hoffmans, the settlors, as their own trustees and beneficiaries (along with their children). Although the guaranties were signed by the Hoffmans as individuals, the bank was well aware of their trust capacities, and should have been aware of the rules regarding the purpose, usefulness, and limitations on the inter vivos trust device." (*Id*. at p. 320.) "These trustees were personally liable on the contract they entered into on behalf of the trust. There is a significant identity between these individuals and their inter vivos trust during their lifetimes, such that their trust should be deemed to be a 'mere instrumentality' . . . through which they operated, but which never served to remove them from the status of primary obligors. Accordingly, they must be considered to be primary obligors along with their trust." (*Id*. at p. 321, citation omitted.)

Similarly, in *Cadle*, Harvey, the settlor and trustee of his intervivos revocable trust, purported to guarantee a loan on which the trust was the principal obligor. The court held the guaranty was ineffective for antideficiency purposes because Harvey was the principal obligor on the note. (*Id*. at pp. 323-325.)

In short, it does not matter that the names on a promissory note and trust deed are different from those on the guarantee agreement if the supposed guarantors are nothing more than principal obligors under another name. "[I]f the guarantor is actually the principal obligor, he is entitled to the unwaivable protection of the antideficiency statutes,

7

including Code of Civil Procedure section 580d, which prohibits a deficiency judgment after nonjudicial foreclosure of real property under a power of sale (as occurred here)." (*River Bank America v. Diller* (1995) 38 Cal.App.4th 1400, 1420; see *Greenspan v. LADT LLC* (2010) 191 Cal.App.4th 486, 522; *Nevin v. Salk* (1975) 45 Cal.App.3d 331, 341.)

"'Unlike a corporation, a trust is not a legal entity. Legal title to property owned by a trust is held by the trustee . . . .' '"A . . . trust . . . is simply a collection of assets and liabilities. As such, it has no capacity to sue or be sued, or to defend an action."'" (*Stoltenberg v. Newman* (2009) 179 Cal.App.4th 287, 293.) "[T]he proper procedure for one who wishes to ensure that trust property will be available to satisfy a judgment . . . [is to] sue the trustee in his or her representative capacity." (*Galdjie v. Darwish* (2003) 113 Cal.App.4th 1331, 1349.)

Here, when Redwood Trust loaned $9.8 million to the Meruelo trust it sought no financial information about the trust itself, only about the trustors, Belinda and Homero Meruelo. When the trust defaulted, PNL, Redwood's successor in interest, sued the trustees in their representative capacities for liability under the primary obligation. Clearly, Redwood Trust and then PNL were aware that the Meruelo loan fell within the well established rule that when a loan is made to a revocable trust, the trustees of the trust are primary obligors. The trustees' guarantee therefore added no additional security and could not be employed as an artifice to circumvent the antideficiency laws.

Respondent argues the borrowers and guarantors here are not the same because in the October 2008 reinstatement agreement, Meruelo Pomona was substituted for the Meruelo Trust as the borrower. Recall that by way of the reinstatement agreement Belinda Meruelo reaffirmed the promissory note, deed of trust, and guaranty, and more importantly reaffirmed a purported assignment of the original loan to Meruelo Pomona. Respondent argues this assignment transferred the loan from the Meruelo Trust to a third party, Meruelo Pomona, and removed the Meruelos as primary obligors, which hence

8

created their obligation to guarantee the loan. The argument is without merit for two reasons.

First, no evidence of any assignment of the loan from the Meruelo Trust to Meruelo Pomona exists other than this reference in the reinstatement agreement. Without the assignment itself, however, we can only speculate on the nature of Meruelo Pomona's interest in the loan and its status as a potential borrower. The second reason the assignment, if it existed, did not breathe life into the Meruelos' sham guaranty is that it failed to remove them as primary obligors. Going just by the title of the purported assignment, its stated effect was only to "include" Meruelo Pomona as successor to the original borrower. The title leaves uncertain whether Meruelo Pomona supplanted the Meruelo Trust on the loan or merely joined it as a co-debtor, presently assumed any obligations under the original loan, and, if it did, assumed all or only some of them. The reinstatement agreement did provide that Belinda Meruelo would execute another guaranty of the original note, but this apparently never occurred.

The instant case is indistinguishable from *Torrey Pines*, which held that when a debtor is nothing more than an instrumentality of individuals who purport to guarantee the debtor's obligation, the guarantors are principal obligors protected by the antideficiency laws.

## DISPOSITION

The judgment is reversed. Appellants are to recover their costs on appeal.

NOT TO BE PUBLISHED.


                                                            CHANEY, Acting P. J.

We concur:

        JOHNSON, J.                                 MILLER, J.[*]

---

[*] Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.