Filed 5/13/14  Sterling Trust v. Edwards CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| STERLING TRUST et al., | D063035 |
| Plaintiffs and Respondents, | (Super. Ct. No. 37-2011-00052412-CU-BC-NC) |
| v. | |
| GUY R. EDWARDS, | ORDER DENYING REHEARING AND MODIFYING OPINION |
| Defendant and Appellant. | NO CHANGE IN JUDGMENT |

THE COURT:

It is ordered that the opinion filed herein on April 23, 2014, be modified as follows:

On page 6, second sentence of the first paragraph, the word "Edwards" is changed to the words "Edwards's company" so the sentence reads:

> However, that was a preliminary document, evidencing Hensel Financial's agreement to loan money to Edwards's company.

There is no change in the judgment.

Appellant's petition for rehearing is denied.

_____

NARES, Acting P. J.

Copies to:  All parties

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| STERLING TRUST et al., | D063035 |
| Plaintiffs and Respondents, | |
| v. | (Super. Ct. No. 37-2011-00052412-CU-BC-NC) |
| GUY R. EDWARDS, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of San Diego County, Timothy M. Casserly, Judge.  Affirmed.

The David Epstein Law Firm, David G. Epstein; Dykema Gossett and Ronald M. Greenberg for Defendant and Appellant.

Beberman, Stoffel & Beberman and James Jay Stoffel for Plaintiffs and Respondents.

This is an action to enforce a personal guaranty that defendant Guy R. Edwards signed to secure a loan from Hensel Financial, Inc. (Hensel Financial) to Edwards's company, Manna International, Inc. (Manna).  Plaintiffs Sterling Trust; Charles Gensler

and Lucy Gensler; Ronald Scott; Hal Holker and Shirley Holker, trustees of the Holker Family Trust; and Robert Maes, trustee of Maesco, Inc. Defined Benefit Plan (collectively, plaintiffs), are assignees of the promissory note and personal guaranty. When Manna defaulted on the note, plaintiffs brought an action to enforce Edwards's guaranty. The court thereafter granted plaintiffs' motion for summary judgment.

On appeal Edwards asserts the court erred in granting summary judgment because (1) he was personally liable on the loan agreement and, thus, under antideficiency law the guaranty cannot be enforced against him; (2) the guaranty falls within the "sham" guaranty doctrine; (3) the court's order failed to address the fact Edwards was a signatory to the loan agreement; and (4) the court erred in overruling Edwards's objection to plaintiffs' request for judicial notice. We affirm.

FACTUAL AND PROCEDURAL BACKGROUND

A. *The Loan and Personal Guaranty*

In September 2006 Hensel Financial made a loan to Manna in the sum of approximately $400,000. The signature line states that Edwards was signing the loan as president of Manna. The loan was secured by a deed of trust encumbering Manna's commercial real property. Edwards also signed the deed of trust on behalf of Manna as its president. As a requirement of the loan, Edwards signed a guaranty in his individual capacity. Thereafter, Hensel Financial assigned the loan to plaintiffs.

The guaranty Edwards signed states that he unconditionally guarantees and promises to pay all amounts due under the loan agreement. The guaranty provides: "Lender is unwilling to make the Loan based solely on the security offered by Borrower

2

and Borrower's own creditworthiness, unless an individual with a creditworthiness comparable to that of Guarantor guaranty the Loan in accordance with the terms and conditions set forth below." The guaranty further provides that it is "separate, independent of and in addition to the obligations and undertakings of Borrower pursuant to the Note and Deed of Trust, Guarantor further agrees that a separate action or actions may be brought and prosecuted against Guarantor hereon whether or not action is brought against Borrower or whether or not borrower be joined in any such action or actions and independent of any action at law or proceeding under the power of sale provision in the Deed of Trust." Edwards further agreed to waive "any right to assert that the lender is precluded from proceeding against him if lender forecloses and further waives any right to any defense based upon the foreclosure defense . . . ."

B. *Manna Defaults on the Loan*

On July 1, 2008, Manna defaulted on the note, and, on April 6, 2009, the trustee conducted a nonjudicial foreclosure on the property under the deed of trust, and the real property collateral was transferred by the trustee's deed upon sale. At the time of the sale, Manna owed a total of $446,150 and West Street LLC bid $200,000.01, which resulted in an offset of the sum due under the note and guaranty. That left $246,149.99 owing, plus accrued interest.

C. *Summary Judgment Motion/Court's Ruling*

Plaintiffs brought a motion for summary judgment seeking to establish their right to enforce the guaranty. Edwards opposed the motion asserting (1) plaintiffs could not recover a deficiency from him as guarantor because he was also the borrower, (2) the

3

"sham guaranty" doctrine barred plaintiffs' recovery, and (3) there were triable issues of fact on the defenses of usury and "straw transaction." Edwards also objected to plaintiffs' request that the court take judicial notice of the fact that Hensel and Hensel Financial were licensed real estate brokers.

The court granted plaintiffs' motion. In doing so, the court first rejected Edwards's contention the guaranty was a sham:

> "Defendant argues the guaranty is a sham because Manna was wholly owned and controlled by Defendant, and the guaranty is an unlawful attempt to secure a deficient judgment on a non-judicial foreclosure. Plaintiffs present evidence, however, that Manna was a valid California Corporation in good standing, and Defendant signed the guaranty in his individual capacity. [Citation.] Although Defendant represents that Hensel Financial presented the guaranty as a mere formality, the language of the guaranty states that the 'lender is unwilling to make the loan based solely on the security offered by Borrower and Borrower's own creditworthiness, unless an individual with a creditworthiness comparable to that of Guarantor guaranty the Loan,' and that 'Guarantor has agreed to execute this Guaranty in order to guarantee to Lender repayment of the Loan pursuant to the terms of the Note and that he is undertaking an independent obligation separate from that of Borrower to repay the Loan.' [Citation.] Defendant has presented no admissible evidence supporting this defense."

With regard to Edwards's usury and straw transaction defenses the court found:

> "Despite Defendant's usury defense, Civil Code section 1916.1 provides that 'the restrictions upon rates of interest contained in Section 1 of Article XV of the California Constitution shall not apply to any loan or forbearance made or arranged by any person licensed as a real estate broker by the State of California, and secured, directly or collaterally, in whole or in part by liens on real property.' Although Defendant argues that the subject loan was a straw transaction because Hensel Financial was acting on behalf of individuals or entities not entitled to lend money at the rate in question, Hensel Financial is a licensed real estate broker."

4

DISCUSSION

## I.  *STANDARDS GOVERNING SUMMARY JUDGMENT MOTIONS*

"Because this case comes before us after the trial court's grant of summary judgment, we apply these well-established rules: ' " '[W]e take the facts from the record that was before the trial court when it ruled on that motion,' " ' and we ' " ' " 'review the trial court's decision de novo, considering all the evidence set forth in the moving and opposing papers except that to which objections were made and sustained.' " ' " ' [Citation.]  We also ' " 'liberally construe the evidence in support of the party opposing summary judgment and resolve doubts concerning the evidence in favor of that party.' " ' "  (*Tverberg v. Fillner Construction*, *Inc.* (2010) 49 Cal.4th 518, 522.)  "We need not defer to the trial court and are not bound by the reasons in its summary judgment ruling; we review the ruling of the trial court, not its rationale."  (*Oakland Raiders v. National Football League* (2005) 131 Cal.App.4th 621, 630.)

## II.  *ANALYSIS*

### A.  *Manna, Not Edwards, Was The Borrower*

Edwards contends that because he was personally a party to the loan agreement, under antideficiency law the guaranty could not be enforced against him.  We reject this contention.

The undisputed facts show the promissory note and deed of trust were signed by Edwards in his capacity as president of Manna, not personally.  The only document that he signed in his personal capacity was the guaranty.

5

Edwards points to a document entitled "Loan Agreement," that does not have a signature line stating that Edwards was signing as president of Manna. However, that was a preliminary document, evidencing Hensel Financial's agreement to loan money to Edwards. "[I]n larger, more complex loan transactions, the lender may require a loan agreement in addition to its other standard loan documentation. . . . The loan agreement typically defines and explains the terms of the contemplated loans; and, in some cases, may operate as a binding 'loan commitment.'" (Greenwald et al., Cal. Practice Guide: Real Property Transactions (The Rutter Group 2012) ¶ 6:180, pp. 6:38 to 6-39 (rev. #1, 2011).) The promissory note and deed of trust that evidence the actual loan itself were both signed by Edwards in his capacity as president of Manna.

Moreover, the language of the loan agreement itself evidences that the borrower was Manna, not Edwards. It states that "BORROWER will deliver to COMPANY (Hensel Financial) a Note and Deed of Trust, securing the same acceptable to COMPANY . . . ." It is undisputed that the note and deed of trust were given by Manna, not Edwards. The loan agreement further states that "COMPANY is in a position to procure a Loan Policy of Title Insurance for COMPANY'S benefit with a liability of not less than the principal amount of the loan, on the following described real property (the 'Property'): APN 152-012-13 & 14, Oceanside, CA." The described real property was owned by Manna.

The loan agreement also states: "The undersigned will pay all costs, expenses and charges as itemized and estimated on the Mortgage Loan Disclosure Statement given to BORROWER and executed by BORROWER, which is incorporated herein by this

6

reference."  The mortgage loan disclosure statement states that the loan is secured by Manna's real property and is signed by Edwards in his capacity as president of Manna.

He also asserts the guaranty cannot be enforced because he was told by Hensel that it was a mere "formality."  However, this contention directly contradicts the language of the guaranty that states the "Lender is unwilling to make the Loan based solely on the security offered by Borrower and Borrower's own creditworthiness, unless an individual with a creditworthiness comparable to that of Guarantor guaranty the Loan in accordance with the terms and conditions set forth below."

B.  "*Straw Man*" *and Usury Defenses*

As the court found, although Edwards contends that Hensel was a straw man for plaintiffs so they could make the loan at a usurious rate of interest, these defenses fail because Hensel Financial is a licensed real estate broker.  Civil Code section 1916.1 provides in part, "The restrictions upon rates of interest contained in Section 1 of Article XV of the California Constitution shall not apply to any loan or forbearance made or arranged by *any person licensed as a real estate broker* by the State of California, and secured, directly or collaterally, in whole or in part by liens on real property."  (Italics added.)  Thus, these defenses are unavailing.

C.  "*Sham Guaranty*" *Defense*

Edward asserts that *Cadle Co. II v. Harvey* (2000) 83 Cal.App.4th 927 (*Cadle*) supports his position that the guaranty was a sham.  However, *Cadle* actually supports *plaintiffs'* position.

"The courts have repeatedly recognized that the antideficiency laws embodied in [Code of Civil Procedure] sections 580a through 580d and 726 reflect a legislative policy that strictly limits the right to recover deficiency judgments for the amount the debt exceeds the value of the security." (*Cadle, supra,* 83 Cal.App.4th at p. 932.) "The debtor cannot be compelled to waive the antideficiency protections in advance [citations] because the antideficiency legislation was established for a public reason and [the protections] cannot be contravened by a private agreement." (*Ibid.*)

However, "the protections afforded to debtors under the antideficiency legislation do not directly protect guarantors from liability for deficiency judgments. [Citation.] [I]f a guarantor expressly waives the protections of the antideficiency laws, a lender may recover the deficiency judgment against the guarantor even though the antideficiency laws would bar the lender from collecting that same deficiency from the primary obligor." (*Cadle, supra,* 83 Cal.App.4th at p. 932.)

Edwards again asserts that he was a borrower under the loan, and therefore the guaranty was a sham and was unenforceable. However, the undisputed facts in this case are that the only principal obligor is Manna, a California corporation, and that Edwards is the guarantor. Therefore, the guaranty is not a sham and Edwards is not entitled to the protections of the antideficiency law.

D. *Court's Minute Order*

Edwards asserts that the court's minute order was deficient because it failed to address the "extensive" evidence that he personally was a signatory on the loan. This contention is unavailing.

8

In its minute order the court stated that it was relying on all "the evidence presented." That was sufficient.

Code of Civil Procedure section 437c, subdivision (g) provides in part: "Upon the grant of a motion for summary judgment, on the ground that there is no triable issue of material fact, the court shall, by written or oral order, specify the reasons for its determination. The order shall specifically refer to the evidence proffered in support of, and if applicable in opposition to, the motion which indicates that no triable issue exists. The court shall also state its reasons for any other determination."

Although the trial court did not extensively discuss the evidence offered in support and opposition to the motion for summary judgment, its minute order was sufficient. Its order did specify the reasons for its determinations and reference relevant evidence. Under such circumstances, we find that it was adequate for purposes of Code of Civil Procedure section 437c, subdivision (g). Moreover, "even assuming that, ideally, a further statement ought to have been given, there is no harm where, as here, our independent review establishes the validity of the judgment." (*Goldrich v. Natural Y Surgical Specialties, Inc.* (1994) 25 Cal.App.4th 772, 782.)

E. *Edwards's Objection to Hensel's Proof of Licensure*

Edwards asserts the court erred in overruling his objection to Hensel's declaration stating Hensel Financial and Hensel were licensed real estate brokers. Specifically, he argues the court should not have taken judicial notice of printouts from the Department of Real Estate showing that they were licensed because the printouts were not authenticated. We reject this contention.

9

1. *Background*

In his declaration filed in support of the motion for summary judgment Hensel stated that he was "the President of Hensel Financial" and that "Hensel Financial has been, and is still, licensed as a California corporate real estate broker, License #0834600." Hensel further stated in his declaration that in his individual capacity he was "licensed by the California Department of Real Estate as a real estate broker, License #00710033."

Edwards objected to the declaration, based upon the fact that no copy of Hensel's license was provided.

The court overruled Edwards's objection.

Plaintiffs also filed a request for judicial notice of online licensing information from the California Department of Real Estate. In that request for judicial notice Hensel stated that "[t]he California Department of Real Estate online records are available public records which the plaintiffs did not need to request the court to take judicial notice of because Hensel could provide, and did provide, testimony as to these undisputed facts through his personal knowledge. [¶] Nevertheless, plaintiffs have attached as Exhibit 11 and Exhibit 12 to their Request for Judicial Notice, filed concurrently herewith, copies of the California Department of Real Estate, online licensing information, for Hensel and Hensel Financial, which reflect Hensel is, and has been, a licensed real estate broker since January 13, 1981 and Hensel Financial is, and has been, a licensed real estate broker since April 15, 1982."

10

Edwards objected to the request for judicial notice. The objection was based on the fact that the documents taken from the Internet were not authenticated.

The court granted Hensel's request for judicial notice.

2. *Analysis*

It is of no moment that the court granted Hensel's request for judicial notice because Hensel's declaration itself established that he and Hensel Financial were licensed real estate brokers. Hensel has personal knowledge of those facts and thus his declaration was competent evidence of licensure.

Moreover, the online licensing documents were matters of which the court could properly take judicial notice. (See *Elmore v. Oak Valley Hospital Dist.* (1988) 204 Cal.App.3d 716, 722 [judicial notice of a statement of identity filed by a hospital with the Secretary of State was proper].)

DISPOSITION

The judgment is affirmed. Plaintiffs shall recover their costs on appeal.

NARES, Acting P. J.

WE CONCUR:

O'ROURKE, J.

AARON, J.