Filed 7/17/14  Winchester Property v. Nevis CA3

# NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## THIRD APPELLATE DISTRICT

### (San Joaquin)

----

| | |
|---|---|
| WINCHESTER PROPERTY COMPANY, LLC, | C072926 |
| Plaintiff and Respondent, | (Super. Ct. No. 39-2010-00252259-CU-OR-STK) |
| v. | |
| ALFRED NEVIS et al., | |
| Defendants and Appellants. | |

While it is against public policy for the primary debtor on a real property purchase loan (secured by the real property) to waive statutory antideficiency protection for an unpaid loan,  a "true guarantor" of the loan, and not the primary debtor in disguise as a guarantor, may waive such protection.  (*Cadle Co. II v. Harvey* (2000) 83 Cal.App.4th 927, 932 (*Cadle*).)

1

In this summary judgment appeal, we conclude that defendant loan guarantors have raised a triable issue of material fact to support their sham guaranty affirmative defense—i.e., have raised a triable issue that they were actually the primary debtors—by presenting evidence that there was no legal separation between them and the primary debtors, and that the lender structured the loan in a manner to circumvent the antideficiency law. (*California Bank & Trust v. Lawlor* (2013) 222 Cal.App.4th 625, 628, 638 (*Lawlor*).) Accordingly, we reverse the summary judgment in favor of the lender's assignee; and, as a consequence, we also reverse the separately appealed from postjudgment discovery order involving financial information concerning the loan "guarantors" (this order included sanctions).[1]

## FACTUAL AND PROCEDURAL BACKGROUND

This lawsuit concerns two loans that were used to purchase a 38-unit apartment complex in Lodi (that straddles two property parcels). Plaintiff Winchester Property Company, LLC, is the assignee of Redwood Mortgage Investors VII (collectively hereafter, "Lender"), which made the two loans and held the promissory notes and deeds of trust securing them. After the primary debtors defaulted on both loans, Lender nonjudicially foreclosed on the two real properties, and then filed this lawsuit to make the loan guarantors cover the loan balance deficiencies.

The relevant details of the two loans are as follows.

*Loan 1*

Primary debtors: Santa Barbara Holding Company (SB Holding Co.), a general partnership, and McCoy North, LLC (McCoy).

Guarantors: Alfred Nevis (Nevis) and Port Kihei Investments, Inc. (PK Investments) (collectively, Guarantors).

---

[1] We consolidated the two appeals.

2

*Loan 2*

Primary debtor:  McCoy.

Guarantors:  Nevis and PK Investments (collectively, Guarantors).

Nevis presented evidence that, at all relevant times, he was the general and controlling partner of primary debtor SB Holding Co.; the chief executive officer and sole shareholder of primary debtor McCoy; and the chief executive officer and owner of guarantor PK Investments.  (Lender concedes on appeal that Nevis, as a general partner, is entitled to antideficiency protection for SB Holding Co., but not for McCoy.)

The trial court granted summary judgment to Lender, finding no triable issue of fact that Guarantors breached their guaranties on Loans 1 and 2.  In these guaranties, Guarantors waived antideficiency protection.

## DISCUSSION

"The aim of the summary judgment procedure is to determine, through the use of declarations and evidence disclosed in discovery, whether the parties possess conflicting evidence on a material issue that requires a trial to sort out—in short, whether a triable issue of material fact exists.  [Citation.]  [¶] . . . [¶]  We review independently from the trial court the summary judgment papers.  We do not resolve factual issues but ascertain whether there are any to resolve."  (*Yanez v. Plummer* (2013) 221 Cal.App.4th 180, 185-186.)  "Because a successful summary judgment motion denies the losing party a trial, the papers of the moving party are strictly construed while those of the losing party are liberally construed."  (*Id.* at p. 183.)

A plaintiff seeking summary judgment must present evidence sufficient to establish every element of its cause of action.  If the plaintiff clears this hurdle, the burden shifts to the defendant to show that a triable issue of material fact exists as to that cause of action or an affirmative defense.  (*Lawlor*, *supra*, 222 Cal.App.4th at pp. 630-631.)

3

The parties here agree that Lender has met its summary judgment burden as plaintiff, and that it is up to defendant Guarantors to raise a triable issue of material fact as to their affirmative defense of a sham guaranty. As we shall explain, Guarantors have risen to the occasion.

The antideficiency protection afforded primary debtors on real property secured promissory notes (loans) is found in Code of Civil Procedure section 580d, subdivision (a), which states as pertinent, "[N]o deficiency judgment shall be rendered for a deficiency on a note secured by a deed of trust . . . on real property . . . in any case in which the real property . . . has been sold by the . . . trustee under power of sale contained in the . . . deed of trust [(i.e., sold in nonjudicial foreclosure)]." It is against public policy for a primary debtor to waive this protection, but not for a guarantor to do so. (*Cadle*, *supra*, 83 Cal.App.4th at p. 932.)

However, if a guarantor of a real property secured note (loan) is actually the note's primary debtor in disguise, that "guarantor" is entitled to this unwaivable antideficiency protection. (*River Bank America v. Diller* (1995) 38 Cal.App.4th 1400, 1420 (*River Bank*).)

In determining whether Guarantors here have raised a triable issue of material fact on their sham guaranty affirmative defense, we examine whether they have presented evidence that the legal relationship between them as guarantors and the purported primary debtor did not separate them from the primary obligation, and whether the lender required or structured the loan transaction in a manner designed to disguise the primary debtor as a guarantor so as to circumvent the antideficiency law. (*Lawlor*, *supra*, 222 Cal.App.4th at p. 638.)

In a declaration opposing Lender's motion for summary judgment, Nevis declared that, at all relevant times, he was the general and controlling partner of SB Holding Co. (coprimary debtor on Loan 1); the chief executive officer and sole shareholder of McCoy

4

(coprimary debtor on Loan 1, and primary debtor on Loan 2); and the chief executive officer and owner of PK Investments (guarantor on Loans 1 and 2, along with Nevis individually).

Nevis additionally declared:

- "[Primary debtor McCoy] was and is a single property LLC owned by [Guarantor Nevis] and formed strictly for [the] purpose of this lending transaction."

- "At all times, [Lender] was aware that [primary debtor McCoy] was formed strictly to hold title to the property.  [Lender] for its own financial purposes required a separate and distinct entity be formed to hold title and manage the subject property. [Lender] required both [Guarantors—i.e., Nevis and PK Investments] to execute guarantees on the two loans affecting the subject property."

- "[Lender] required this (setting up a new LLC [(i.e., McCoy, as primary debtor on Loans 1 & 2)]) for this project and every other project which they provided financing to [Nevis] (e.g., Somerfield North LLC, a Sacramento project; Lincoln Village North HSP, LLC, a Yuba City project).  [Lender] required [Nevis] to guarantee each of the loans.  [Nevis] was [in reality] the primary [debtor] on all of these loans including the loans which are the subject of this litigation."

- "Prior to granting [Loans 1 and 2], [Lender] *only* sought financial information regarding qualifications and payback of loan ability from [Guarantors—i.e., Nevis and PK Investments].  [Lender] issued the loan[s] based upon the credit worthiness of [Nevis and PK Investments] (see attached discovery[-]disclosed documents [(Exhibit[s] A-F)] received from [Lender] which are incorporated herein by reference)."  (Italics added.)

The question whether a guarantor is a true guarantor or a disguised primary debtor is generally a question of fact.  (*River Bank*, *supra*, 38 Cal.App.4th at p. 1422.)  There is

5

nothing "special" about the present case in this respect; thus, the question here is one of fact.

The sufficiency of Nevis's declaration in raising a triable issue of material fact concerning Guarantors' sham guaranty affirmative defense is best illustrated by comparing this evidence to the lack of such evidence in *Lawlor*; the *Lawlor* court upheld summary adjudications against the guarantors there, who had alleged a sham guaranty defense.

In *Lawlor*, the guarantors failed to offer any evidence (1) showing "a unity of interest" between them and the primary debtors on the loans; (2) showing the lender there "requested, required, or otherwise had any involvement in selecting the entities, or the form of the entities, that were the . . . primary [debtors]"; and (3) showing the lender there "did not also require financial information regarding" the primary debtors. Moreover, in *Lawlor,* there was evidence (4) suggesting that the *Lawlor* guarantors formed the primary debtors "for their own purposes independent of the loans." (*Lawlor*, *supra*, 222 Cal.App.4th at pp. 638-640.)

Nevis's declaration concerning a sham guaranty contrasts "on all fours" with the *Lawlor* guarantors' evidence (or lack thereof). And, interestingly, Nevis did not have the benefit of *Lawlor* as an evidentiary template to follow (nor did the trial court); *Lawlor* was decided more than a year after the trial court granted summary judgment to Lender here.

Realizing the significance of Nevis's declaration, Lender argues that Guarantors' "claim of sham guaranty is based upon unsubstantiated, conclusionary statements by Nevis, which have no foundation other than speculation. The statements by Nevis not only lack foundation, but represent complete speculation and conclusionary statements which tracts [*sic*] *Lawlor*." Lender is referring to the *Lawlor* guarantors' suggestion that there was no legal separation between them and the *Lawlor* primary debtors because the

6

guarantors owned and controlled the debtors, the " 'principal purpose' " of the debtors was to hold title to the real property security for the loans, and the real property security was " 'the [debtors'] principal asset.' " (*Lawlor*, *supra*, 222 Cal.App.4th at p. 639.) *Lawlor* stated that "[t]hese conclusory statements . . . fail to establish there was no legal separation between" the guarantors and the primary debtors. (*Ibid.*) In contrast, in the present case, the unity of interest between Guarantors and the primary debtors disclosed in Nevis's declaration is tighter than in *Lawlor* ("principal" purpose and asset in *Lawlor* versus "sole" purpose and asset here); and, more importantly, there is evidence Lender structured Loans 1 and 2 in a manner designed to disguise the primary debtors as guarantors—i.e., in a manner designed to circumvent the antideficiency law.

Furthermore, Lender's criticisms of Nevis's declaration as unsubstantiated, conclusionary, and speculative ring hollow given that Nevis was the most involved, pivotal figure in the Loan 1 and 2 transactions on the borrower's side. And Lender's two technical objections to Nevis's declaration—which Lender has waived in any event by not raising them in the trial court (Code Civ. Proc., § 437c, subds. (b)(5), (d); Cal. Rules of Court, rule 3.1352)—do not ring at all. Lender asserts the declaration does not technically set forth (1) the location of its signing, or (2) that Nevis is qualified to sign a declaration for the various corporations and partnership. (See ARB 8-9) Nevis made his declaration under penalty of perjury, signed the declaration both individually and in all his relevant corporate and partnership capacities (explaining those capacities), and stated he could testify with personal knowledge and competently to all the matters contained therein.

We conclude that Guarantors have raised a triable issue of material fact concerning their sham guaranty affirmative defense. This necessitates a reversal of the summary judgment, which in turn necessitates a reversal of the separately appealed

7

postjudgment discovery order (including sanctions) arising from Lender's requests for financial documents from Guarantors (i.e., Nevis and PK Investments).**2**

---

**2** Lender's requests for documents were directed to Nevis, PK Investments, and those acting on behalf of these two. Should they ultimately fail to prevail in this action, Nevis and PK Investments would be well advised to drop their discovery objection that Lender's document requests "are void *ab initio* [(from the beginning)] and *ad infinitum* [(without limit)]" because the requests are improperly "directed to multiple [third] parties [given the "behalf" basis] rather than specifically to the parties to this litigation." At a minimum, Nevis and PK Investments, in this situation, would be obligated to produce their financial documents. (See Code Civ. Proc., §§ 2031.210-2031.240.)

Two other housekeeping matters deserve attention.

First, contrary to Nevis's claim, Civil Code section 1543 does not "state[] indirectly" that a mere guarantor (Nevis) of two or more joint debtors (SB Holding Co. and McCoy on Loan 1) is released from any liability for the guarantee as to McCoy since the parties agree Nevis was released from any liability on the guarantee as to SB Holding Co. Section 1543's language is limited in scope, stating, as pertinent, that "[a] release of one of two or more joint debtors does not extinguish the obligations of any of the others, unless they are mere guarantors . . . ." In other words, a release of joint debtor SB Holding Co. does not release joint debtor McCoy, unless McCoy was a mere guarantor, which it is not (it is a debtor); section 1543 has nothing to do with guarantor Nevis.

Second, Guarantors cannot maintain the "trial court committed reversible error in holding that there [was no triable issue of material fact] whether [Lender] by its less than fair market value bids at the foreclosure sale of both properties breached its duty of good faith and fair dealing owed to [Guarantors] as directly implied in the guarantee contracts (breach of good faith and fair dealing affirmative defense)." For Guarantors to assert successfully a breach of the covenant of good faith and fair dealing, they must have done all, or substantially all, of the significant things that the guarantee contracts required them to do, or they must have been excused from doing so. (See CACI No. 325 [setting forth the essential elements of breach of covenant of good faith and fair dealing].) But Guarantors claim their guarantee contracts are unenforceable because they (the Guarantors) and the primary debtors are one and the same; and the Guarantors' primary debtors did not pay their obligations.

## DISPOSITION

The judgment is reversed.  The postjudgment discovery order of June 5, 2013, is reversed.  Nevis and PK Investments are awarded their costs on appeal.  (Cal. Rules of Court, rule 8.278 (a)(1), (2).)


                                                    _____BUTZ_____, J.


We concur:


_____RAYE_____, P. J.


_____MAURO_____, J.

9